No. 20-50597

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA**,
Plaintiff - Appellee

v.

**TIFFANY RENE SUTTON**,
Defendant - Appellant

---

On Appeal from the United States District Court for the
Western District of Texas, Midland-Odessa Division
U.S.D.C. No. 7:20-cr-00010 (2)

---

**BRIEF OF APPELLANT TIFFANY RENE SUTTON**

---

October 7, 2020

John A. Kuchera

210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com

*Attorney for Appellant*

## Certificate of Interested Persons

The undersigned counsel of record for Appellant certifies that the following parties have interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusals in accordance with Local Rule 28.2.1:

David Counts, U.S. District Judge; 200 E. Wall, Midland, Texas 79701

Ronald C. Griffin, U.S. Magistrate Judge; 200 East Wall, Room 101, Midland, Texas 79701

Monica L. Daniels, AUSA, 400 West Illinois, Suite 1200, Midland, Texas 79701

James Glenn Harwood, AUSA, 400 West Illinois, Suite 1200, Midland, Texas 79701

Victoria Lyn Eckman, Appellant's Trial Counsel, 306 West Wall Street, Suite 822, Midland, Texas 79701

Joseph H. Gay, Jr., AUSA, Government Appellate Counsel, 601 N.S. Loop 410, Suite 600, San Antonio, Texas 78216

John A. Kuchera, Appellant's Appellate Counsel; 210 N. 6th Street, Waco, Texas 76701

/s/ John A. Kuchera
John A. Kuchera

## Statement Regarding Oral Argument

Undersigned counsel has been appointed under the Criminal Justice Act (CJA) to represent Appellant on appeal. Therefore, the internal operating procedures of this Court makes oral argument mandatory unless, after examination of the briefs and record, a three-judge panel of this Court shall be unanimously of the opinion that (1) this appeal is frivolous, (2) the dispositive issue or set of issues has been authoritatively decided or (3) the facts and legal arguments are adequately presented in the briefs and record and the decision process would not be significantly aided by oral argument. See Rule 34(a), Federal Rules of Appellate Procedure, Local Rule 34.8 and IOPs Fifth Circuit Rules & IOPs.

/s/ John A. Kuchera
John A. Kuchera

# Table of Contents

**Page**

Certificate of Interested Persons                                      ii

Statement Regarding Oral Argument                           iii

Table of Contents                                                            iv-v

Table of Authorities                                                        vi-x

Statement of Jurisdiction                                              xi

Statement of Issues Presented                                      xii

Statement of the Case                                                    1-2

Summary of the Argument                                            3-4

Argument and Authorities

   1. Because the district court failed to make the necessary       5-19
      particularized findings as to the scope of criminal activity
      Sutton agreed to jointly undertake in the conspiracy, the
      court also erred in determining the drug quantity
      attributable to Sutton.

     *(a) Background*                                                             5-7
     *(b) Relevant conduct under § U.S.S.G. 1B1.3(a)(1)(B)*   7-8
     *(c) The scope of jointly undertaken criminal activity in a*   9
        *conspiracy*
     *(d) The need for particularized findings*                      9-11
     *(e) Standard of review and error preservation*            11-12
     *(f) Analysis*                                                               12-13
     *(g) Instructive cases*                                                  14-15
     *(h) Plain error – failure to account for personal use*   15-19

2. The district court erred in assessing Sutton a 2-level     20-30
   dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1)
   because Sutton neither possessed the firearm at issue nor
   was she shown to be part of any joint undertaking with the
   person who did possess the firearm.

   *(a) Background*                                    20-21
   *(b) Standard of review and error preservation*     21-22
   *(c) Section 2D1.1(b)(1)*                            22-24
   *(d) Analysis*                                      25-30
     (i) The probation officer's response    25-27
     (ii) U.S. v. Montelongo                  27-29
     (iii) Foreseeability no longer enough    29-30
   *(e) Harm*                                          30


3. Sutton's sentence was procedurally unreasonable because    31-36
   the district court failed to respond to her arguments in support
   of a downward variance.

   *(a) Background*                                    31-32
   *(b) Types of sentences and sentencing procedure*   32-34
   *(c) Standard of review*                            34-35
   *(d) Analysis*                                      35-36


Relief Requested                                              36

Certificate of Service                                        37

Certificate of Compliance                                     38

# Table of Authorities

Page(s)

**Cases**

*Chavez-Meza v. United States,*
138 S. Ct. 1959 (2018) ...................................................................... 35

*Gall v. United States,*
552 U.S. 38 (2007) ................................................................... 7, 33, 34

*Rita v. United States,*
551 U.S. 338 (2007) .......................................................................... 34

*United States v. Asch,*
207 F.3d 1238 (10th Cir. 2000) ........................................................ 16

*United States v. Brantley,*
537 F.3d 347 (5th Cir. 2008) ........................................................... 32

*United States v. Clark,*
389 F.3d 141 (5th Cir. 2004) ................................................ 16, 17, 19

*United States v. Colon-Solis,*
354 F.3d 101 (1st Cir. 2004) ............................................................ 10

*United States v. Evbuomwan,*
992 F.2d 70 (5th Cir. 1993) ............................................................... 8

*United States v. Figueroa-Labrada,*
720 F.3d 1258 (10th Cir. 2013) ..................................................... 9, 12

*United States v. Flores-Alvarado,*
779 F.3d 250 (4th Cir. 2015) ........................................................... 10

*United States v. Fox,*
548 F.3d 523 (7th Cir. 2008) ........................................................... 14

*United States v. Frausto-Carlos*,
    397 F. App'x 276 (8th Cir. 2010) ........................................................ 35

*United States v. Fregoso*,
    60 F.3d 1314 (8th Cir. 1995) ....................................................... 16, 18

*United States v. Gomez*,
    905 F.3d 347 (5th Cir. 2018) ....................................................... 34, 35

*United States v. Haines*,
    803 F.3d 713 (5th Cir. 2015) ....................................................... 14, 16

*United States v. Hooten*,
    942 F.2d 878 (5th Cir. 1991) ............................................................ 29

*United States v. Innamorati*,
    996 F.2d 456 (1st Cir. 1993) ................................................. 16, 17, 18

*United States v. Jacobs*,
    635 F.3d 778 (5th Cir. 2011) ....................................................... 32, 33

*United States v. Johnson*,
    812 F. App'x 252 (5th Cir. 2020) ..................................................... 19

*United States v. Lampton*,
    158 F.3d 251 (5th Cir. 1998) .............................................................. 8

*United States v. Marek*,
    238 F.3d 310 (5th Cir. 2001) ........................................................... 12

*United States v. Meza*,
    701 F.3d 411 (5th Cir. 2012) ........................................................... 26

*United States v. Mondragon-Santiago*,
    564 F.3d 357 (5th Cir. 2009) ........................................................... 33

*United States v. Montelongo*,
    539 F. App'x 603 (5th Cir. 2013) ................................................. 27, 28

*United States v. Page,*
    232 F.3d 536 (6th Cir. 2000)........................................ 16, 18

*United States v. Puig-Infante,*
    19 F.3d 929 (5th Cir. 1994)......................................... 10, 26

*United States v. Redo,*
    560 F.3d 539 (6th Cir. 2009)............................................. 34

*United States v. Reza,*
    728 F. App'x 357 (5th Cir. 2018)........................................ 21

*United States v. Rodriguez,*
    630 F.3d 377 (5th Cir. 2011)............................................ 21

*United States v. Roman,*
    747 F. App'x 969 (5th Cir. 2019)........................................ 25

*United States v. Ruiz,*
    659 F. App'x 188 (5th Cir. 2016)........................................ 11

*United States v. Salazar-Puente,*
    311 F. App'x 116 (10th Cir. 2009)....................................... 35

*United States v. Sanchez,*
    667 F.3d 555 (5th Cir. 2012)............................................ 34

*United States v. Sells,*
    477 F.3d 1226 (10th Cir. 2007).......................................... 13

*United States v. Simmons,*
    568 F.3d 564 (5th Cir. 2009)............................................ 35

*United States v. Smith,*
    13 F.3d 860 (5th Cir. 1994).............................................. 8

*United States v. Snook,*
    60 F.3d 394 (7th Cir. 1995)......................................... 16, 18

*United States v. Sterling*,
    942 F.3d 439 (8th Cir. 2019)..............................................................13

*United States v. Stone*,
    139 F.3d 822 (11th Cir. 1998)............................................................16

*United States v. Swiney*,
    203 F.3d 397 (6th Cir. 2000)................................................................9

*United States v. Terry*,
    771 F. App'x 277 (4th Cir. 2019)................................................35, 36

*United States v. Turner*,
    319 F.3d 716 (5th Cir. 2003)..............................................................11

*United States v. York*,
    600 F.3d 347 (5th Cir. 2010)..............................................................34

*United States v. Zapata-Lara*,
    615 F.3d 388 (5th Cir. 2010)..............................................22, 23, 24

## Statutes

18 U.S.C. § 3553 (a) ...............................................................................33

18 U.S.C. § 3553 (c) ...............................................................................33

## Sentencing Guidelines

U.S.S.G. 2D1.1(b)(1) ..............................................................................20

U.S.S.G. § 1B1.1(a)(1)............................................................................29

U.S.S.G. § 1B1.1 (a)-(c) .........................................................................33

U.S.S.G. § 1B1.1, comment. (backg'd)...................................................32

U.S.S.G. § 1B1.3(a)(1)(B)...........................................8, 18, 19, 23, 29

U.S.S.G. § 1B1.3, cmt. n.2 ........................................................................9

U.S.S.G. § 1B1.3, cmt. n. 3(A) ................................................................... 19

U.S.S.G. § 1B1.3, cmt. n.3(B) .................................................... 8, 9, 10, 19

U.S.S.G. § 2D1.1(b)(1) ............................... 20, 21, 22, 23, 25, 27, 30, 36

U.S.S.G. § 2D1.1, cmt. n. 11(A) ............................................................ 22

U.S.S.G. Ch. 5, Pt. A ................................................................................. 30

U.S.S.G. App. C, amend. 790 ......................................................... 19, 30

## Other Authorities

https://drugfree.org/article/overdose-response-treatment/ ..................... 16

https://www.drugabuse.gov/drug-topics/opioids ..................................... 16

# Statement of Jurisdiction

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States. 18 U.S.C. § 3231. Appellant was charged with and convicted of violating Title 21 U.S.C. §§ 841(a)(1), 841(b)(1) and 846. ROA.25-26, 87.

The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States. 28 U.S.C. § 1291. Notice of appeal in a criminal case must be filed in the district court within 14 days of the entry of judgment. Fed. R. App. P. 4(b)(1). The judgment was signed July 7, 2020. ROA.43. Appellant's notice of appeal was filed July 21, 2020. ROA.47.

This is an appeal from a final judgment.

## <u>Statement of Issues Presented</u>

1. Whether the district court failed to make the necessary particularized findings as to the scope of criminal activity Sutton agreed to jointly undertake in the conspiracy, the thereby also erred in determining the drug quantity attributable to Sutton.

2. Whether the district court erred in assessing Sutton a 2-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1), given that Sutton neither possessed the firearm at issue nor was she shown to be part of any joint undertaking with the person who did possess the firearm.

3. Whether Sutton's sentence was procedurally unreasonable, given that the district court failed to respond to her arguments in support of a downward variance.

TO THE HONORABLE JUDGES OF THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:

NOW COMES Tiffany Rene Sutton, Appellant, by and through undersigned counsel, and files this brief pursuant to the Federal Rules of Appellate Procedure.

## Statement of the Case

Sutton was charged in two counts of a three-count indictment (filed January 8, 2020) with:

**Count One:** Conspiracy to possess with intent to distribute fifty grams or more of actual methamphetamine, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846; and

**Count Three:** Possession with intent to distribute five grams or more of actual methamphetamine, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B).

ROA.25-26.

On February 19, 2020, Sutton pled guilty to both counts before a magistrate judge, without a plea agreement. ROA.71, 87. The magistrate court recommended that the guilty pleas be accepted and on March 6, 2020, the district court adopted that recommendation. ROA.36-37, 39-40.

On July 1[1], 2020, the district court sentenced Sutton to 168 months in prison on both counts (concurrent), five years of supervised release on both counts and no fine. ROA.102-03, 116.

Sutton's notice of appeal was filed July 21, 2020. ROA.47. Trial counsel was allowed to withdraw, and undersigned counsel was appointed to handle the appeal. ROA.51-52.

---

[1] The judgment was signed July 7, 2020. ROA.43.

<u>**Summary of the Argument**</u>

**First issue:** The presentence investigation report (PSR) held Sutton accountable for 76,600.26 kilograms of converted drug weight (base offense level 36) based mostly on drugs and cash found in a residence where Sutton had lived along with at least one other person , a confessed drug dealer. Sutton was in jail at the time the search warrant was executed at the residence, having been arrested the day before. The district court simply adopted the PSR, making no independent particularized findings as to drug quantity attributable to Sutton. The PSR does not describe the layout of the residence or the rooms in which the drugs, currency and other listed items were found. Neither does the PSR refer to proffer interviews, co-conspirator statements, or customer statements to support attributing all the seized drugs and currency to Sutton. Assuming Sutton's personal use amounts (she is an admitted methamphetamine and heroin addict) should not have been used to calculate her base offense level, it is likely she would have ended up with a lower base offense level had the district court made the required particularized findings.

**Second issue:** The district court assessed Sutton a 2-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1) based on the fact that Sutton was a front seat passenger in a vehicle wherein the backseat occupant (Davidson) was found to be in possession of a handgun. The PSR (relied upon by the court) held Sutton accountable for the handgun based on the assumption (unsupported by any facts) that Sutton and Davidson were part of a "jointly under taken criminal activity."

**Third issue:** Sutton requested a downward variance at sentencing based on (1) her minimal criminal history, (2) her cooperation with authorities, and (3) her drug addiction. The district court refused to grant the variance but gave no explanation for the denial. This constituted procedural error.

**Argument and Authorities**

*1. Because the district court failed to make the necessary particularized findings as to the scope of criminal activity Sutton agreed to jointly undertake in the conspiracy, the court also erred in determining the drug quantity attributable to Sutton.*

*(a) Background*

According to the presentence investigation report (PSR), on December 12, 2019, Ector County investigators, while surveilling a residence from which methamphetamine transactions regularly occurred, observed a vehicle stop at the residence at which time one Christopher Aaron Davidson (carrying a black backpack) exited the residence and entered the vehicle. ROA.184, PSR ¶ 3. The investigators eventually stopped the vehicle for a traffic violation after it left the residence. ROA.184, PSR ¶ 3. According to the testimony from the preliminary examination hearing, Sutton was seated in the passenger seat and Davidson was seated in the backseat behind the driver. ROA.62. Sutton's purse contained 15.66 grams of heroin, 13.18 grams of methamphetamine, a digital scale and a large amount of baggies. ROA.185, PSR ¶ 5. Sutton was arrested at the scene. ROA.181.

Sutton told the investigators she obtained heroin and methamphetamine from Kyle Myers, "her friend and roommate," who resided at 2500 West Yukon in Odessa. ROA.185, PSR ¶ 6. The next day, December 13, 2019, investigators executed a search warrant at that residence. Myers and a female, Brandy Dean, were taken into custody. ROA.185, PSR ¶ 6. The search yielded the following:

- 1,290 grams of actual methamphetamine
- 521 grams of heroin
- A Glock 17, Gen 4, 9mm pistol
- 3 magazines with live ammunition
- $21,456 of United States currency
- Packaging material
- Digital scales
- Drug ledgers

ROA.185, PSR ¶ 6. According to the PSR:

Myers was Mirandized and he agreed to speak to investigators. He admitted he picked up the drugs and located and placed them in his RV. Myers admitted he sold methamphetamine, but he denied selling anything else. He reported Sutton sells drugs but not for him.

ROA.185, PSR ¶ 7.

At the PSR interview, Sutton "provided at statement wherein [she] admitted involvement in the offense." ROA.186, PSR ¶ 11. She also said she agreed with the written factual basis. ROA.186, PSR ¶ 11. At Sutton's change of plea hearing, her attorney waived the reading of the written

factual basis. ROA.86-87. Sutton's only admission in the written factual basis was that "she conspired with Myers to possess with the intent to distribute a quantity of Methamphetamine." ROA.114.

The PSR added the drugs found at 2500 West Yukon (converting the currency into 2.5 kilograms of methamphetamine actual) with those found in Sutton's purse and held her accountable for the entire total, 76,600.26 kilograms of total drug weight and a base offense level of 36. ROA.185, PSR ¶ 8; ROA.186, PSR ¶ 13. At sentencing, the district court adopted the PSR. ROA.95.

### (b) Relevant conduct under § U.S.S.G. 1B1.3(a)(1)(B)

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States,* 552 U.S. 38, 49 (2007). In the case of a jointly undertaken criminal activity, whether or not charged as a conspiracy, a co-conspirator may only properly be held accountable for the acts and omissions that were:

(1) within the scope of the jointly undertaken criminal activity,

(2) in furtherance of that criminal activity, *and*

(3) reasonably foreseeable in connection with that criminal activity, that occurred during the commission of the offense of conviction.

U.S.S.G. § 1B1.3(a)(1)(B). It is the Government's burden to establish by a preponderance of the evidence that conduct at issue is in fact relevant conduct. *United States v. Lampton,* 158 F.3d 251, 257 (5th Cir. 1998). In making a relevant conduct determination under § 1B1.3(a)(1)(B), the sentencing court's first job is to ascertain exactly what the defendant agreed to:

> In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must *first determine* the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).

U.S.S.G. § 1B1.3, cmt. n.3(B). If the conduct of others is not within the scope of the defendant's agreement, that conduct should not be included in calculating the defendant's offense level. *United States v. Evbuomwan,* 992 F.2d 70, 73 (5th Cir. 1993); *see also United States v. Smith,* 13 F.3d 860, 864-65 (5th Cir. 1994) (The fact that defendant knew that others were selling drugs in the house was not sufficient to establish jointly undertaken criminal activity.).

*(c) The scope of jointly undertaken criminal activity in a conspiracy*

"[T]he scope of the 'jointly undertaken criminal activity' is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3, cmt. n.3(B). The Sixth Circuit has noted:

> [A]n important distinction exists between the criminal law standard for convicting a defendant of conspiracy and the Guidelines standard for sentencing a defendant convicted of conspiracy. Under conspiracy law, a defendant may be convicted of conspiracy even though he is unaware of all the conspiracy's unlawful aims, as long as he has knowledge of some of those aims. . . .The Guidelines' approach is narrower than the standard for establishing guilt of the conspiracy offense itself.

*United States v. Swiney,* 203 F.3d 397, 402-03 (6th Cir. 2000).


*(d) The need for particularized findings*

A sentencing court must make particularized findings as to a coconspirator's relevant conduct, "whether or not the defendant asks it to do so[.]" *United States v. Figueroa-Labrada,* 720 F.3d 1258, 1264 (10th Cir. 2013); U.S.S.G. § 1B1.3, cmt. n.2 ("In order to determine the defendant's accountability for the conduct of others . . . the court *must* first determine the scope of the criminal activity the particular defendant

agreed to jointly undertake."). As noted above, this requires particularized findings as to (1) the scope of the jointly undertaken criminal activity, (2) whether the conduct at issue was in furtherance of that criminal activity, and (3) whether the conduct at issue was reasonably foreseeable to the defendant in connection with that criminal activity. In making its individualized findings, "the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3, cmt. n. 3(B). Without an individualized finding, "the drug quantity attributable to the conspiracy as a whole cannot automatically be shifted to the defendant." *United States v. Colon-Solis,* 354 F.3d 101, 103 (1st Cir. 2004).

The Fifth Circuit requires district courts to make "express findings" regarding relevant conduct as to individual liability in conspiracy cases. *United States v. Puig-Infante,* 19 F.3d 929, 943 (5th Cir. 1994). A court can satisfy this requirement by adopting the PSR, but only "when the findings in the PSR are so clear that the reviewing court is not left to second guess the basis for the sentencing decision." *Id.* A PSR cannot satisfy the need for express findings if it does not contain the necessary factual support. *See United States v. Flores-Alvarado,* 779 F.3d 250, 257

(4th Cir. 2015) ("Because the PSR does not contain facts sufficient to show that the quantities from the Stokesdale Seizure and Lexington Seizure were within the scope of the criminal activity jointly undertaken by Flores-Alvarado and the district court failed to make any findings on this critical point, the factual findings underlying the court's drug quantity calculations are [internal quotation marks omitted] inadequate.").

### (e) Standard of review and error preservation

Generally, appellate review of a district court's factual determination regarding the quantity of drugs used to establish a base offense level is for clear error. *United States v. Turner,* 319 F.3d 716, 724 (5th Cir. 2003). Because Sutton did not argue in the district court that the court failed to make individual findings as to the scope of criminal activity she agreed to jointly undertake, review is arguably for plain error. *United States v. Ruiz,* 659 F. App'x 188, 192 (5th Cir. 2016). Under this standard, the defendant must show (1) there is an error, (2) that is clear and obvious, (3) that affects her substantial rights, and which seriously affects the fairness, integrity, or public reputation of judicial

proceedings. *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc). In the context of a sentencing court's failure to make particularized relevant conduct findings, a defendant can show her substantial rights have been affected if she can show that if the court had made particularized findings, it is reasonably probable the court would have applied a different guideline range, leading to lower sentence. *Figueroa-Labrada,* 720 F.3d at 1267.

### (f) Analysis

The indictment alleges the conspiracy lasted 43 days, from November 1, 2019 to December 13, 2019. ROA.25. Sutton was in jail on December 13th, the date the search warrant was executed at 2500 West Yukon, having been arrested the day before. ROA.181. She was also in jail from November 9th through November 12th, 2019 on a possession of a heroin charge. ROA.22, 60.

At sentencing, the district court made no findings whatsoever as to the scope of the criminal activity Sutton agreed to jointly undertake. The court simply adopted the PSR:

The Court has reviewed the Presentence Investigation Report[.] I find the report to be accurate. I adopt it and the

application of the United States Sentencing Guidelines contained in the report.

ROA.95. As noted above, the PSR attributes to Sutton all the drugs and currency found in the residence. ROA.185, PSR ¶ 8; ROA.186, PSR ¶ 13. But the PSR includes no facts in support of this assertion. Neither the PSR nor the criminal complaint describe the layout of the residence or the rooms in which the drugs, currency and other listed items were found. Neither does the PSR refer to proffer interviews, co-conspirator statements, or customer statements to support attributing all the seized drugs and currency to Sutton. *See United States v. Sterling,* 942 F.3d 439, 442 (8th Cir. 2019). And nothing in the record establishes how long Sutton had been living at the residence. The PSR appears to simply assume that because Sutton may have been residing at 2500 West Yukon on December 12th, she was therefore criminally responsible for all the drug related items seized at the residence (occupied by at least two other people) the following day. That is not enough. *See United States v. Sells,* 477 F.3d 1226, 1242 (10th Cir. 2007) ("Although the district court adopted the findings contained in the PSR, the PSR did not make the [necessary] particularized determinations[.]"). The following cases are instructive.

*(g) Instructive cases*

In *United States v. Fox,* 548 F.3d 523 (7th Cir. 2008), wherein the defendants (Sykes and Fox) plead guilty to conspiracy to possess with intent to distribute crack cocaine, they described themselves as "crack cocaine addicts who bought, sold and used drugs together [and] spent a lot of their time getting high at Sykes's house." *Id.* at 525. Fox argued that the district court improperly held him accountable as relevant conduct for 40 grams of crack cocaine found in Sykes's residence because the court improperly focused only on foreseeability while ignoring the other requirements of relevant conduct. *Id.* at 531. The Seventh Circuit agreed:

> The court did consider whether Sykes's possession was foreseeable to Fox. But it did not consider that question in the context of a connection with the joint criminal activity between Fox and Sykes. . . . The court stated that "[Fox] was aware that Sykes stored drugs at his residence." Without consideration of whether that awareness arose out of Fox's joint criminal activity with Sykes, however, this finding is insufficient, because reasonable foreseeability requires more than just subjective awareness.

*Id.* at 532; *see also United States v. Haines,* 803 F.3d 713, 741-42 (5th Cir. 2015) (Defendants improperly sentenced under 20-year mandatory minimum based on conspiracy-wide drug quantity instead of statutory

minimum based on drug quantity attributable to defendants as individuals).

### (h) Plain error – failure to account for personal use

Assuming the absence of the necessary particularized findings constitutes clear and obvious error, the next question is whether the district court would have applied a different guideline range, leading to lower sentence, if the court had been working from a correct calculation of Sutton's advisory guideline range. Sutton argues the answer is yes for at least the following reason: Failure to take into consideration amounts attributable to Sutton's personal use.

According to the PSR, Sutton was using methamphetamine in December of 2019 to the tune of "an 8-ball every other day." ROA.189, PSR ¶ 39. She was also a heroin user in December of 2019. ROA.189, PSR ¶ 39. As noted above, she has a pending possession of heroin charge in state court. ROA.22, 60; ROA.188, PSR ¶ 29. She had been an intravenous drug user "since August 2019." ROA.189, PSR ¶ 40. At the time of the above-referenced traffic stop, Sutton's purse contained "a vile

of liquid Naxalone[.]" ROA.184, PSR ¶ 5. Naxalone is used to treat opioid overdoses.[2] Heroin is an opioid.[3]

The Government may respond by citing *United States v. Clark,* 389 F.3d 141 (5th Cir. 2004) for the proposition that:

> [A] district court may properly consider drug amounts intended for the defendant's personal use when calculating the base offense level for a defendant convicted of participating in a drug conspiracy.

*Id.* at 142. As will be shown, *Clark* has been overruled *sub silentio* by an amendment to the sentencing guidelines. In *Clark*, the issue of whether a defendant's personal use amounts could be used in calculating his base offense level was a matter of first impression for the Fifth Circuit. *Id.* The Court cited the following cases as authority for the proposition that personal use amounts could be so used:

> *United States v. Page*, 232 F.3d 536, 542 (6th Cir. 2000); *United States v. Asch*, 207 F.3d 1238, 1244 (10th Cir. 2000); *United States v. Stone*, 139 F.3d 822, 826 (11th Cir. 1998); *United States v. Fregoso*, 60 F.3d 1314, 1328-29 (8th Cir. 1995); *United States v. Snook*, 60 F.3d 394, 396 (7th Cir. 1995); *United States v. Innamorati*, 996 F.2d 456, 492 (1st Cir. 1993).

---

[2] https://drugfree.org/article/overdose-response-treatment/ (last visited September 23, 2020)

[3] https://www.drugabuse.gov/drug-topics/opioids (last visited September 23, 2020)

*Clark,* 389 F.3d at 142. In *Innamorati* (the earliest cited case), the First Circuit, using the definition of relevant conduct from the 1990 guidelines manual, 389 F.3d at 488 n.14, concluded "the central concept . . . is foreseeability." *Id.* at 488. Addressing the argument made by two of the defendants (Thompson and Litterio) that personal use amounts should not be considered in determining their respective guideline ranges, the First Circuit held:

> The pre-sentence report concluded that Thompson purchased small quantities of cocaine for personal use amounting to approximately 46 grams. Further, Thompson admitted before the grand jury that he had been aware since 1983 or 1984 that Innamorati was distributing cocaine, and that he often was present in Innamorati's house when Innamorati possessed large amounts of cocaine. Based on these facts, the probation officer (and later the court) determined that it was reasonable to conclude that Thompson could have *foreseen* that Innamorati was dealing in multiple kilograms. (Emphasis added.)

*Id.* at 489.

> Although Litterio argues that he should not be held responsible for cocaine that he purchased for personal use, this confuses the standard for criminal liability with that for sentencing accountability. Purchases by an addict or casual user for personal use may not automatically make one a member of a conspiracy to distribute. The situation is quite different where, as here, the evidence shows that there was a conspiracy and that a defendant was a member. At that point, that defendant's purchases for personal use are relevant in

determining the quantity of drugs that the defendant *knew were distributed by the conspiracy.* (Emphasis added.)

*Id.* at 492. The bottom line from *Innamorati* is that the First Circuit relied solely on foreseeability in determining that personal use amounts can be used in determining a coconspirator's base offense level.

The Eighth Circuit in *Fregoso* and the Sixth Circuit in *Page* simply relied on the First Circuit's holding in *Innamorati. See Fregoso,* 60 F.3d at 1328-29; *Page,* 232 F.3d at 541-42.

The Seventh Circuit in *Snook* took a bit of a different tack, noting that personal use was "intertwined with the success of the distribution." *Snook,* 60 F.3d at 395-96.

Section 1B1.3 of the Guidelines has been amended seven times since 1990. Section 1B1.3 (a)(1)(B) was amended in 2015 and now provides:

> B)    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
>   *(i)    within the scope of the jointly undertaken criminal activity,*
>
>   (ii)    in furtherance of that criminal activity, and

> > (iii)  reasonably foreseeable in connection with that criminal activity;
>
> > that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

U.S.S.G. § 1B1.3 (a)(1)(B) (2018); U.S.S.G. App. C, amend. 790. As noted above, the very first determination the court must now make is the scope of what a particular defendant agreed to jointly undertake. U.S.S.G. § 1B1.3, cmt. n.3(B). Foreseeability is the third consideration, and only comes into play if the first two criteria are satisfied. See U.S.S.G. § 1B1.3, cmt. n. 3(A) ("The conduct of others that meets all three criteria . . . is relevant conduct under this provision."); *see also United States v. Johnson,* 812 F. App'x 252, 252-53 (5th Cir. 2020) (All three criteria must be established to hold defendant indirectly accountable for third party drug sales).

Regarding Sutton's personal use, it is logically impossible for a person to intend (agree) to distribute to others a controlled substance and at the same time, intend to personally ingest that same controlled substance. The Fifth Circuit's holding in *Clark* regarding personal use can no longer be the law.

*2. The district court erred in assessing Sutton a 2-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1) because Sutton neither possessed the firearm at issue nor was she shown to be part of any joint undertaking with the person who did possess the firearm.*

*(a) Background*

The PSR assessed Sutton a 2-level dangerous weapon enhancement under § U.S.S.G. 2D1.1(b)(1). ROA.186, PSR ¶ 14. Relevant facts regarding the reason for the traffic stop from which this case originated are set forth above in Issue 1(a). The written factual basis and the PSR include the following additional information regarding the discovery of the firearm forming the basis for the § 2D1.1(b)(1) enhancement:

> [Investigator] requested for the driver of the vehicle [Jordan Tavarez] to exit the vehicle and she did comply.
>
> . . .
>
> [Investigator] also requested for Davidson to exit the vehicle due to prior dealings with Davidson. [Investigator] requested consent to search Davidson['s] person and consent was granted. Davidson was found to be free of contraband. [Investigator] requested for Sutton to exit the vehicle and she did comply.

ROA.113.

> Tavarez asked for a jacket from the vehicle and officers retrieved a jacket from the backseat area of the vehicle. As the jacket was retrieved, investigators observed a Smith and Wesson . . . 9mm handgun. The firearm was loaded with 13,

9mm rounds and it was located near where Davidson had been sitting.

ROA.184, PSR ¶ 4.

*(b) Standard of review and error preservation*

A sentencing court's application of the Sentencing Guidelines is reviewed de novo and the court's findings of fact are reviewed for clear error. *United States v. Rodriguez,* 630 F.3d 377, 380 (5th Cir. 2011). Application has to do with whether the facts found are legally sufficient to support the enhancement. *United States v. Reza,* 728 F. App'x 357, 357-58 (5th Cir. 2018).

Sutton objected in writing and at sentencing that the § 2D1.1(b)(1) enhancement should not be applied because she did not possess the firearm that formed the basis for the enhancement. ROA.94-95, 194. The relevant exchange from sentencing was as follows:

> Defense Counsel: The two-level increase for the use of a gun was applied to my client and involved an individual named Davidson who just happened to be in the car at the same time as my client. Davidson was actually in another case indicted separately from this, not included as a co-conspirator or anything of that nature, yet my client . . . got the plus two for the gun[.] And, again, we would still assert that it was clearly improbable that the weapon would be connected in that offense as it . . . applies to her. I understand the *Montelongo* case does not

agree with that. But, again, we would really strongly urge you to look at the totality of the circumstances and how her arrest took place and consider that this is . . . a pretty tenuous link between the two[.]

District Court: Mr. Harwood.

AUSA: Your Honor, based on the factual basis recitation and the probation response, the government doesn't have anything to add.

District Court: Thank you. And the Court will rely on the probation officer's response as well in overruling the objection and relying upon *U.S. v. Montelongo*[.]

ROA.94-95. Sutton thus preserved error.


*(c) Section 2D1.1(b)(1)*


Section 2D1.1(b)(1) provides:

> If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

U.S.S.G. § 2D1.1(b)(1). The commentary adds:

> The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected the offense.

U.S.S.G. § 2D1.1, cmt. n. 11(A).


*United States v. Zapata-Lara,* 615 F.3d 388 (5th Cir. 2010) is instructive because it describes the two ways the government can meet its burden to prove a proper application of the § 2D1.1(b)(1) enhancement. The defendant therein pled guilty to conspiring to possess

with the intent to distribute cocaine. The PSR assessed a § 2D1.1(b)(1) enhancement which the district court adopted. *Id.* at 390. The court's reasoning was as follows:

> A gun is a well-accepted, well-known tool of the trade[.] It's been clearly established by precedent that . . . at an event such as this involving the conveyance of five-and-a-half-kilos of cocaine . . . a gun would be present.

*Id.* at 389. The defendant argued on appeal that the government had failed to establish that he was personally responsible for the gun or that possession of the gun by someone else was reasonably foreseeable to him. *Id.* at 391. The Fifth Circuit noted that the government can prove up a § 2D1.1(b)(1) enhancement in two ways:

> First, it can prove that *the defendant personally possessed* the weapon, by showing a temporal and spatial relationship of the weapon, the drug trafficking activity, and the defendant. . . . To make that showing, the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred[.] [internal quotation marks omitted] Alternatively, *when another individual involved in the commission of an offense possessed the weapon*, the government must show that the defendant could have reasonably foreseen that possession. . . . The guidelines hold a defendant responsible for all reasonably foreseeable acts of the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B). (Emphasis added.)

*Id.* at 390. The Fifth Circuit, after determining that the district court must have been relying on the second method, held that the court had no basis to apply the enhancement:

> Here, the district court determined that the enhancement was applicable because of the presence of a handgun. The court's comments suggest a finding of foreseeability . . . but the court never connected the handgun to any particular co-participant. *It is prerequisite that a coconspirator knowingly possessed the weapon;* only then can the court determine whether there existed the required link between the non-possessing defendant and the weapon by finding that the co-participant's possession was foreseeable to the defendant. Thus, because nothing in the record explicitly links the weapon to any of Zapata-Lara's coconspirators, he cannot be held derivatively responsible for it. (Emphasis added)

*Id.* at 390-91. In response to the government's argument that the defendant hadn't shown that it was plainly improbable that the handgun was connected to the offense, the Fifth Circuit instructed:

> The defendant has that burden *only after the government has met its initial burden of proving a connection between the handgun and the drug-trafficking activity.* (Emphasis added.)

*Id.* at 391 n.5. The Fifth Circuit remanded the case to allow the district court, in the event the court still determined the weapon enhancement to be applicable, to "make the appropriate findings and state plainly the basis for its decision." *Id.* at 391.

*(d) Analysis*

Again, the Government had the initial burden to prove by a preponderance of the evidence that either (1) Sutton personally possessed the firearm at issue or (2) a coconspirator of Sutton possessed the firearm (which was foreseeable to Sutton) as part of jointly undertaken drug-trafficking conduct. *United States v. Roman,* 747 F. App'x 969, 970 (5th Cir. 2019). In the instant case, the Government stumbled at the first step. The Government made no attempt to establish that either Davidson (seated in the back seat of the vehicle) or the driver (Jordan Tavarez) were part of any drug-trafficking joint undertaking with Sutton.

The district court made no findings in support of its decision to overrule Sutton's objection to the § 2D1.1(b)(1), relying instead on "the probation officer's response" and "*U.S. v. Montelongo.*" ROA.95. Both will be addressed.

## (i) The probation officer's response

As noted above (Issue 1(d)), the need for express findings can be satisfied by reliance on the PSR but only "when the findings in the PSR

are so clear that the reviewing court is not left to second guess the basis for the sentencing decision." *Puig-Infante,* 19 F.3d at 943.

Possession can be actual or constructive.

Constructive possession may be found if the defendant had (1) owner ship, dominion, or control over the item itself or (2) dominion or control over the premises in which the item was found.

*United States v. Meza,* 701 F.3d 411, 419 (5th Cir. 2012). Nothing in the record supports the notion that Sutton herself personally possessed the firearm forming the basis of the complained-of enhancement. Davidson subsequently pled guilty to possessing the firearm himself based on the same set of facts.[4] And Sutton did not own or control the vehicle ("premises") in which she was a passenger. That leaves only the second option; i.e., Davidson and Sutton had jointly agreed to possess with intent to distribute methamphetamine, and Sutton could have reasonably foreseen Davidson's possession of the firearm. That appears to be the theory upon which the probation officer was relying:

In Sutton's case, she was a passenger in a vehicle where a firearm was located. Although Christopher Aaron Davidson is not a co-defendant in Sutton's case, he was indicted in Docket No. 7:20CR00009(001) based on the same Offense

---

[4] See U.S.D.C. No. 7:20-cr-00009(1).

> Conduct recorded on December 12, 2019. Just as in *U.S. v. Montelongo*, it is shown by a preponderance of the evidence that Sutton possessed a weapon(s) in furtherance of Sutton's and Davidson's *jointly undertaken criminal activity.*

ROA.195. So what basis is there from the PSR or the probation officer's response for concluding that Davidson and Sutton had agreed to a joint undertaking to distribute methamphetamine? Answer: There is no basis. The only "joint undertaking" in the record is that they rode in the same vehicle (probably for no more than a matter of minutes). If there was no evidence of a joint undertaking between Davidson and Sutton regarding the intent to distribute methamphetamine, Davidson's possession of the firearm cannot be attributed to Sutton.

### (ii) U.S. v. Montelongo

At issue in the unpublished *Montelongo* opinion was whether Montelongo (the defendant) could be held accountable for a firearm possessed by Arthur Luna, *a coconspirator*:

> Montelongo's offense level was increased by two levels pursuant to § 2D1.1(b)(1) based on the presence of a firearm found in a safe in the master bedroom of Arthur Luna, one of Montelongo's drug suppliers. To apply this enhancement based on Montelongo's *vicarious* possession, *the Government had to show by a preponderance of the evidence that Luna possessed the firearm* in connection with the conspiracy in which he and Montelongo participated and that Montelongo

27

could have reasonably foreseen that Luna would possess a weapon in furtherance of *their jointly undertaken criminal activity.* (Emphasis added.)

*United States v. Montelongo,* 539 F. App'x 603, 606 (5th Cir. 2013). The very next sentence in the opinion negates the possibility of relying on the opinion regarding the spatial relationship between coconspirator Luna himself and the firearm at issue:

> With respect to possession, *we will not consider Montelongo's contention that the Government did not prove that Luna knowingly possessed the weapon because it is raised for the first time in Montelongo's reply brief.* (Emphasis added.)

*Id.* at 606-07. The opinion then goes on to address the spatial relationship between Luna's assumed possession of the firearm and the drug-trafficking conspiracy; this is the language from the opinion relied upon by the probation officer's response.

> On the day that the gun was discovered inside Luna's house, Luna brokered a deal in which Montelongo retrieved a half-pound of methamphetamine from a vehicle parked in front of Luna's house. This was sufficient to establish a spatial relationship between the drug trafficking conspiracy, the firearm, and Luna.

ROA.195. The bottom line was Montelongo could be held accountable for Luna's possession of a firearm because they were coconspirators. But in

the instant case, there is nothing to establish that Davidson and Sutton were in any way coconspirators.

### (iii) Foreseeability no longer enough

Aside from the fact that nothing in the record suggests Davidson and Sutton agreed to jointly undertake anything, Sutton argues there is an additional reason why the *Montelongo* opinion should not be looked to for guidance. Foreseeability as to a coconspirator's possession of a firearm is no longer enough to establish relevant conduct to the non-possessing coconspirator. The foreseeability standard regarding a coparticipant's possession of a weapon originated in the Fifth Circuit from U.S.S.G. § 1B1.1(a)(1), which at one time held a defendant accountable for any foreseeable act by a codefendant taken in furtherance of the execution of a jointly undertaken criminal activity. *United States v. Hooten,* 942 F.2d 878, 881-82 (5th Cir. 1991). But as noted above (Issue 1(h)), foreseeability is no longer the main consideration in determining whether a defendant can be held accountable for the possession of dangerous weapon by another. It is only the third of three considerations, the first two being whether the conduct was within the scope of the jointly undertaken criminal activity and in furtherance of that criminal activity. U.S.S.G. §

1B1.3 (a)(1)(B) (2018); U.S.S.G. App. C, amend. 790.  In the instant case, the Government certainly did not establish (1) that Sutton agreed that Davidson would possess a firearm, or (2) that Davidson's possession of the firearm somehow furthered any jointly undertaken criminal activity.

### (e) Harm

According to the PSR (which the district court adopted, ROA.95), Sutton's total offense level was 35, ROA.187, PSR ¶ 22, and her advisory sentencing range was 168-210 months. ROA.191, PSR ¶ 50. The district court sentenced her to the low end, 168 months on both counts of conviction. ROA.102. Without the 2-level § 2D1.1(b)(1) enhancement, Sutton's total offense level would have been 33 with an advisory sentencing range (Criminal History category I) of 135-168 months. U.S.S.G.  Ch. 5, Pt. A. Sutton has shown harm.

**3.  Sutton's sentence was procedurally unreasonable because the district court failed to respond to her arguments in support of a downward variance.**

*(a) Background*

Sutton's trial counsel filed a sentencing memorandum with the district court requesting a downward variance based on:

- Sutton's minimal criminal history (Criminal History Category I), ROA.201;

- Sutton's cooperation with authorities, ROA.202; and

- Sutton's drug addiction. ROA.202-03.

More specifically:

> The guidelines range for this offense makes Defendant Sutton subject to a minimum of 14 years as a person whose only prior convictions involve a traffic matter and a misdemeanor assault. Defendant Sutton urges this court to diverge from the guideline range in her case due to the disparate impact upon her of imposing those guidelines.

ROA.203.

> At sentencing, trial counsel re-urged these arguments:

> She didn't, you know, really come into any felony issues until she became an intravenous drug user less than a year ago.

ROA.97.

So here we are looking at over a decade in federal prison for somebody who essentially is a first offender.

ROA.99.

So really, Your Honor, it . . . comes down to . . . not greater than necessary punishment here in this case.

ROA.100-01.

The district court's response: "Thank you. The Court does not depart from the recommended sentence." ROA.102.


*(b) Types of sentences and sentencing procedure*

The Fifth Circuit recognizes three types of sentences: (1) a sentence within a properly calculated Guidelines range, (2) a sentence that includes an upward or downward Guidelines departure, and (3) a non-Guideline sentence outside the relevant Guidelines range. *United States v. Brantley,* 537 F.3d 347, 349 (5th Cir. 2008). This last type of sentence is known as a "variance." U.S.S.G. § 1B1.1, comment. (backg'd) (2018); *United States v. Jacobs,* 635 F.3d 778, 782 n. 18 (5th Cir. 2011).

The correct procedure for imposing a federal sentence is as follows: The district court (1) calculates the advisory sentencing range; (2) considers the specific offender characteristics and grounds departure set

forth in the Guidelines; and (3) weighs the applicable factors in 18 U.S.C. § 3553(a)[5] as a whole. *Gall v. United States,* 552 U.S. 38, 50-51 (2007); *Jacobs,* 635 F.3d at 782; U.S.S.G. § 1B1.1 (a)-(c) (2018). The court must make an individualized assessment based on the facts presented, including the parties' arguments. *United States v. Mondragon-Santiago,* 564 F.3d 357, 360 (5th Cir. 2009). A district court must, at the time of sentencing, state in open court the reasons for its imposition of the particular sentence. 18 U.S.C. § 3553 (c). "The sentencing judge should set forth enough to satisfy the appellate court that *he has considered the*

---

[5] Section 3553 (a) sets forth the following factors:

- The nature and circumstances of the offense;
- The history and characteristics of the defendant;
- The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant;
- The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- The kinds of sentences available;
- The applicable Sentencing Guideline range;
- The need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and
- The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553 (a).

*parties' arguments* and has a reasoned basis for exercising his own legal decisionmaking authority." (emphasis added) *Rita v. United States,* 551 U.S. 338, 356 (2007); *United States v. Sanchez,* 667 F.3d 555, 567 (5th Cir. 2012) (Where a defendant presents nonfrivolous reasons for imposing a non-Guideline sentence, "the judge will normally go further and explain why he has rejected those arguments"); *United States v. Redo,* 560 F.3d 539, 547 (6th Cir. 2009) ("Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.").

### (c) Standard of review

Appellate review of a sentence is for reasonableness under an abuse of discretion standard. *Gall*, 552 U.S. at 46. The reviewing court must first determine whether the district court committed procedural error. *United States v. York,* 600 F.3d 347, 361 (5th Cir. 2010). A district court's failure to adequately explain a chosen sentence is procedural error. *United States v. Gomez,* 905 F.3d 347, 351 (5th Cir. 2018). When a defendant raises a procedural complaint in district court, appellate review is *de novo* as to the court's application or interpretation of the

Sentencing Guidelines, and factual findings are for clear error. *United States v. Simmons,* 568 F.3d 564, 566 (5th Cir. 2009).

### (d) Analysis

If a district court fails to respond in any way to a defendant's arguments for a variance, meaningful appellate review is impossible. *See Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018). This is because the reviewing court must be satisfied that the sentencing court has considered the defendant's arguments. *Gomez,* 905 F.3d at 353.

Sutton requested a downward variance based on (1) her minimal criminal history, (2) her cooperation with authorities, and (3) her drug addiction. All three of these factors have been considered valid reasons for a variance. *See e.g. United States v. Salazar-Puente,* 311 F. App'x 116, 119 (10th Cir. 2009) (downward variance based in part on minimal criminal history); *United States v. Terry*, 771 F. App'x 277, 278-79 (4th Cir. 2019) (sentence vacated and case remanded where district court failed to address defendant's argument for a variance based on cooperation with authorities); *United States v. Frausto-Carlos*, 397 F. App'x 276, 277-78 (8th Cir. 2010) (downward variance based on

methamphetamine addiction). The district court's response – "Thank you" – amounts to no explanation for the court's decision not to vary downward. Sutton thus requests vacatur and remand. *See Terry,* 771 F. App'x at 279 ("[W]e find it plausible that the court might have imposed lower sentences had it specifically addressed Terry's nonfrivolous mitigation arguments[.]").

## Relief Sought

Sutton requests that her sentence be vacated and that the cause be remanded to the district court for re-sentencing with the following directives: (1) the district court is to make individualized findings as to the drug quantity for which Sutton should be held accountable, (2) the § 2D1.1(b)(1) enhancement is not to be applied, and (3) the district court is to address Sutton's mitigation arguments in support of her request for a variance.

Respectfully submitted,

/s/ John A. Kuchera

John A. Kuchera
210 N. 6th St.
Waco, Texas 76701
(254) 754-3075
(254) 756-2193 (facsimile)
SBN 00792137
johnkuchera@210law.com
Attorney for Appellant

## Certificate of Service

I certify that on the 7th day of October, 2020, I electronically filed the foregoing with the Fifth Circuit Court of Appeals using the CM/ECF system which will send notification of such filing to the following:

Mr. Joseph H. Gay, Jr.,
Assistant United States Attorney

/s/ John A. Kuchera
John A. Kuchera

## Certificate of Compliance with Rule 32(a)

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,865 words, excluding the parts of the brief exempted by Fed. R. App. P 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P 32(a)(5) and the type style requirements of Fed. R. App. P because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century, size 14 font.

/s/ John A. Kuchera
John A. Kuchera

Attorney for Tiffany Rene Sutton

Dated:  October 7, 2020